Peelle, Ch. J.,
delivered the opinion of the court:
As the findings disclose, the claimant on July 24, 1905, entered into a contract with the Government, through the Acting Secretary of the Interior, for the erection of certain structures required in connection with the Huntley (Mont.) reclamation project, in accordance with the advertisement, proposal, and specifications made part of the contract set forth in the petition, excepting in so far as the specifications might thereafter be amended or modified by the terms of the contract, as set forth in article 1 thereof.
The contention is that the words “ actual necessary cost ” contained in paragraph 24 of the specifications include liability insurance, depreciation of plant, expenses of superintendents, and loss on account of boarding men.
Paragraph 24 of the specifications provides:
“ Changes and extra work. — The Secretary of the Interior reserves the right to make such changes in the specifications of work or material at any time as may be deemed advisable, without notice to the surety or sureties on the bond given to secure compliance with the contract, by adding thereto or deducting therefrom, at the unit prices of the contract, or at such allowances for changes of materials as shall be deemed just and reasonable by the engineer, whose decision shall be binding on both parties. The right to make material changes in the quantities listed in the proposal is an essential part of the contract, and bidders must make their estimates accordingly. Should any change be made in a particular piece of work after it has been commenced, so that the contractor is put to extra expense, the engineer shall make reasonable allowance therefor, which action shall be binding on both parties. Extra work or work not provided for in the specifications, if ordered in *337 writing by the engineer, will be paid for at actual necessary cost, as determined by the engineer, plus 15 per cent. Demand for such extra payment must be accompanied by the certificate of the engineer that such work has been satisfactorily performed or the material furnished, and stating the amount to be allowed therefor. Such demand must be made before the time of the payment following the completion of said extra work, or the furnishing of the material.”
Subsequent to the execution of the contract and after the claimant had entered upon the performance thereof he was, on May 2, 1906, directed through the supervising engineer to build, under said paragraph 24, certain structures listed, as set forth in Finding II, on force account under the provisions of said paragraph. That is to say, at “ actual necessary cost,” to be determined by the engineer, plus 15 per cent.
Various other changes were from time to time ordered in the work for which claimant was paid at unit prices, as provided in said paragraph, but no payments were made for the items now claimed for. The engineer, under date of June 2, 1906, as set forth in his letter at the end of Finding II, directed the claimant to assemble the necessary plant and equipment to enable him to complete the work on force account as well as other work under the “ structures ” contract, for which work, as therein provided, he was assured that in making up the final estimate proper and equitable consideration would be given, and an allowance recommended to cover the liability insurance of laborers, the unloading and storage of construction materials, and the depreciation of machinery.
On May 31, 1907, when the “ structures ” work .and extra work so ordered were completed to that date, the claimant forwarded his statement of account for the value of labor and material furnished, adding thereto 15 per cent as provided in said paragraph 24, which he certified was correct and which, after certification by the engineer of the Declamation Service, was paid. No mention was made in said account of the items for which payment is now claimed; but upon completion of the work and before payment of the retained percentages under paragraph 96 of the specifications, the claimant did make claim for expenses of the class *338 referred to in Finding IY, and by reason thereof a board of engineers of the Reclamation Service was assembled without apparent authority but presumably as advisory, and after conferring with the claimant they “recommended for settlement, subject to the regulations of the department,” the claim for liability insurance, depreciation of the plant and storage warehouses upon the basis or ratio of the force work to the other work performed, and also the total loss in the boarding of men on force account; in all, $3,387.48. Thereupon the claim so recommended and certified was presented to the auditor, who disallowed the claim on the ground that “ all of the extra work under this contract appears to have been performed prior to June 1,1907, and the cost thereof to the contractor, plus the 15 per cent provided for in paragraph 24, itemized and determined by the engineer, approved by the director, and paid for in full upon settlements heretofore made in this office. The Government’s obligation for this extra work, under the terms of this contract, has thus been discharged.”
From the decision thus rendered an appeal was taken to the Comptroller of the Treasury for the reasons stated by the Secretary of the Interior in his letter set forth in Finding VI; but the decision of the auditor was affirmed by the assistant comptroller (14 Comp. Dec., 297) on the ground that the items for which claim is here made were not a part of the “ actual necessary cost' ” of such extra work within the meaning of paragraph 24 of the specifications, holding that as the claimant at the end of each month during the progress of the work had made his demand for extra payment based on the cost of work and material, which he certified to be correct, as did the engineer in charge, and settlement was made therefor upon that basis, he was “ estopped from demanding an extra allowance as a part of the cost of the extra work; ” that the Government was not “ responsible for the course of business of the contractor and the performance of the whole contract; ” that if it were it “ would virtually create a partnership between the contractor and the Government as to losses only; ” that if there had been a profit on the boarding of men the same could not have been *339 deducted from the “ extra work as an element of the cost of such work within the meaning of the contract.”
As is apparent from what has been said, the claimant bases his right to recover under paragraph 24 of the specifications on the ground that the language therein respecting “ extra work or work not provided for in the specifications ” embraces the items of the present claim as a part of the “ actual necessary cost” determined by the engineer, about which there was a difference of opinion between the officers of the Reclamation Service and the accounting officers.
When the claimant from time to time presented his accounts, certifying that they represented the “ actual necessary cost,” the presumption might well be indulged that the items now claimed as a part of such cost were included therein, and upon this theory the claim was disallowed by the accounting officers. However, as the Secretary of the Interior, in his application for an 'appeal from the decision of the auditor to the comptroller, states that “ manifestly these general items could not be accurately determined except by a thorough review of the contractor’s books and after the completion of the extra work,” we are not inclined to hold that the claimant is concluded by reason of having excluded the present items from his monthly estimates, though he might along with such monthly estimates have included, if entitled to recover therefor at all, a pro rata amount of the several items of the claim ejnbraced in this suit.
The views of the Secretary of the Interior that the items could not be accurately determined until after the completion of the extra work are in harmony with the assurances given by Engineer Stockton to the claimant on conference with the supervising and consulting engineers, when the extra work ivas ordered, to the effect “ that in making up the final estimate proper and equitable consideration will be given and an allowance recommended to cover the liability insurance of laborers, the unloading and storage of construction materials, and the depreciation of machinery.” Nothing was said therein about the loss on board of men, if, indeed, the question had then arisen. But, as disclosed in the latter part of Finding III, after the claimant had received the order for the *340 extra work, there was some negotiation with the local engineers as to the meaning of the clause providing for the extra work and payment of the “ actual necessary cost,” the claimant contending that as there were no boarding houses in the vicinity it was necessary for him to establish boarding camps and board the men, which he did at less than the actual cost to him; and this course the claimant deemed best to continue, on the ground that to increase the price of board would, in his opinion, have necessitated an increase in the price of labor. To this arrangement the engineers appear to have agreed, and that item, along with the other items of the claim, was approved by the board of engineers assembled, as stated, to inquire into the expenses incurred by the claimant other than those which he had certified as the “ actual necessary cost,” for which he had been paid.
In view of assurances so thereof by the Secretary of the Interior we must regard such action as a construction of said paragraph 24 embracing said claims as part of the actual necessary cost in so far as the extra work out of which they arose was ordered in writing. Said claims were subsequently approved not only by the board of engineers referred to, whether by authority or as advisory, but were certified as provided in said paragraph and presented by the claimant to the accounting officers along with his claim for retained percentages, which latter was paid under the certification by the accounting officers without controversy.
The loss on the men can work nor an element of the “ actual necessary cost ” of the work performed any more than the profit thereon would have diminished such cost. True, the claimant doubtless acted in good faith in continuing to board the men at a loss rather than to increase the price and thereby take chances on having to increase wages. And although this course of the claimant appears to have been acquiesced in by the Engineer officers, we can not agree that it was within their province so to do under the contract. They were there as the agents of the Government to direct the execution of the contract and the performance of any extra work which they might determine was necessary for the effectual completion of the *341 work covered by tbe specifications; and that there might be no mistake about such extra work they were required to give the directions therefor in writing.
We are inclined to agree with the Secretary of the Interior and the engineer officers having to do with the work in their construction of the contract as embracing these items of the claim, and we do so on the ground, as before stated, that the amount of such claims could not have been definitely ascertained until the completion of the work and the final estimate, of which the claimant was in effect advised by the engineer officer at the times such extra work was directed to be done.
The defendants contend, on the authority of Sweeney v. United States (109 U. S., 618), Railroad Company v. March (114 U. S., 549, 553), Hoffeld (36 C.. Cls., 230, 235), and McIntyre (44 C. Cls., 448), that under paragraphs 24, 36, and 96 of the specifications the certification by the Chief Engineer was a condition precedent to the payment thereof, and that as the 15 per cent was not certified by the engineer nor Chief Engineer, therefore the whole account should be disallowed.
Paragraph 36 of the specifications provides that “ the payments due shall be made to the contractor upon the presentation of proper accounts, prepared by the engineer and approved by the Chief Engineer, in accordance with the provisions made therefor and pertaining to the contract,” while paragraph 96 provides that the work shall be completed to the “ entire satisfaction of the Chief Engineer.” The claim for $3,387.48 was certified both by the engineer and his assistant, as set forth in Finding IY, and also certified with other accounts, as set forth in Finding V, by the engineer and supervising engineer and the Director of the Declamation Service, followed by a release by the claimant, as provided by the contract, of all claims and demands in law and equity on account of said contract. The approval of the account by the director instead of the Chief Engineer was doubtless because prior thereto, as set forth in Finding VIII, the Declamation Service as a branch of the Geological Survey, with a chief engineer at it head, was made independent of the Geological Survey and the designation of “chief engi *342 neer” was changed to “director,” which latter, by direction of the Secretary of the Interior, as set forth in said Finding VIII, was directed “ to give administrative examination and approval of the accounts of fiscal officers and claims of creditors submitted for direct settlement in the Treasury Department.” This being true, we must hold that the certification of the account was sufficient and that the additional 15 per cent by way of profit on the work provided for in paragraph 24 was a matter of calculation thereunder to be made by the accounting officers on the sum so certified.
Ordinarily expenses for insurance of men and depreciation of plant are included in a contractor’s bid, and in respect to the items of work expressly provided for in the specifications for which he was paid that was true in this case; but the “ extra work or work not provided for in the specifications ” was to “be paid for at actual necessary cost,” to be determined by the engineer, plus 15 per cent; so that the “actual necessary cost” under the custom prevailing included the liability insurance of men as well as depreciation of plant, which was determined by the engineer to be a part of the actual necessary cost of the extra work, which, as found by the board of engineers, was 29.09 per cent of the total work done.
The percentage of fixed charges for the extra work to the total work done was determined in like manner, as was also the depreciation of warehouses. Therefore, we must hold that as the extra work so ordered in writing was not provided for in the specifications, i. e., was outside the specifications, and was to “be paid for at actual necessary cost,” to be determined by the engineer (which he has done), plus 15 per cent, and as the same could not be determined until the final completion of the work, the claimant is entitled to recover on the items of liability insurance of men, depreciation of plant, fixed charges, and depreciation of warehouses, or $2,251.36, plus 15 per cent, making in all $2,589.06.
The item for the loss on boarding of men is disallowed for the reasons stated.
Howry, J., was not present when this case was tried and took no part in the decision.